SMALL, J.T.C.
Plaintiff, City of East Orange, appeals from a judgment of the Essex County Board of Taxation reducing the 1995 added assessment against the subject property to the value of the property determined by the board’s judgment concluding the appeal of the 1995 regular assessment against the property. The basis of the county board’s judgment is its application of the Freeze Act, N.J.S.A. 54:3-26, to the judgment with respect to the 1995 regular assessment. The city asserts that the Freeze Act does not apply to the facts in this case. The defendant property owner has moved for summary judgment pursuant to R. 4:46.
For the tax year 1995, the property identified as Block 270, Lot 15, and located at 280 South Harrison Street in East Orange, was valued for assessment purposes as follows:
Land $304,000
Improvements 296,000
Total $600,000
The property was placed on the exempt list because on October 1, 1994, the assessing date for 1995, it was owned by the City of East Orange. N.J.S.A. 54:4-23 and 54:4-27.
On December 12, 1994, the property was purchased by RPM Development Corp. from the City of East Orange. On January 31,1995, the defendant-taxpayer acquired the property from RPM Development Corp.
Although the property was listed on the tax rolls as exempt at the time it was acquired by the taxpayer, the taxpayer appealed the valuation determination of the assessor to the Essex County Board of Taxation in the name of the taxpayer’s tax exempt predecessor (RPM Development Corp.). A hearing was held on July 11, 1995 before the Essex County Board of Taxation. The parties concede that they both presented testimony and other evidence on the issue of value. On July 14,1995, the board issued a judgment reducing the valuation of the property as follows:
*427 Land $100,000
Improvements 33,600
Total $133,600
The board, however, mistakenly removed the exempt status of the property and assessed the property at the reduced value. On July 20, 1995, the board corrected its error and restored the property to the exempt status list. The board explained its judgment on the face of the judgment form as “EXMPT VAL REDUCED FROM $600,000 TO $133,600.” Neither the city nor the taxpayer filed an appeal to the Tax Court of either the July 14,1995 or the July 20,1995 judgments.
On or about October 1, 1995, the assessor made an added assessment prorated for 12 months[1] against the property as follows:
Land $304,000
Improvements 296,000
Total $600,000
The taxpayer timely appealed the added assessment to the Essex County Board of Taxation, and a hearing occurred on December 14, 1995. N.J.S.A. 54:4-63.11. The board refused to accept evidence on the issue of value and issued a judgment on December 29, 1995 reducing the total assessment to $133,600, citing the Freeze Act, N.J.S.A. 54:3-26, as the basis for its decision. The city then took this appeal from the December 29, 1995 county board judgment.
Taxpayer’s summary judgment motion seeks to dismiss the city’s appeal, arguing that the county board decision of July 20, 1995 was a conclusive and binding judgment for purposes of the Freeze Act because the issue of value was fully litigated, and it should not be compelled to litigate value for a second time. *428 N.J.S.A. 54:3-26; City of Newark v. Fischer, 8 N.J. 191, 84 A.2d 547 (1951). The city argues that the July 1995 county board decision was void for lack of jurisdiction since the property was listed as exempt and there was no assessment for the taxpayer to dispute. The city argues that both before and after the appeal the assessment on the subject property was “exempt.”
Four specific issues have been raised by the parties in this summary judgment motion:
1. Did the county board have jurisdiction in its July 1995 judgment to change the underlying value determination of the 1995 exempt assessment?
2. If the county board lacked such jurisdiction, could the city waive its jurisdictional objections?
3. If the city could waive such jurisdictional objections, did it waive such objections?
4. Is the July 1995 county board judgment, which reduced the value underlying the exempt assessment, of the type that is subject to the Freeze Act?
Although not addressed by the parties, a fifth issue is raised— whether the municipality, having litigated the issue of value in the county board hearing on the regular assessment, is collaterally estopped from raising that issue in the taxpayer’s appeal of the added assessment?
I.
As of October 1 of the pre-tax year, the assessor is required to value all property in the taxing district, whether taxable or exempt. N.J.S.A. 54:4-23. If the property is listed as exempt, it is entered on the exempt status list along with its taxable value. N.J.S.A. 54:4-27. One reason for accurately listing the taxable value of exempt property is “to provide a basis for any in lieu of property tax payments which might be legislatively authorized for any exempt property.” New Jersey Division of Taxation, Handbook for New Jersey Assessors, § 407.31 (1989).
*429 If property listed as exempt on the tax rolls on October 1 later ceases to be exempt, the property shall become assessable and added to the tax rolls by way of an added or omitted assessment. N.J.SA. 54:4-63.2, -63.3, and -63.26. The law requires that the value of the property listed on the added assessment list be the same as that provided on the exempt list for the property. N.J.S.A. 54:4-63.27; 18 Washington Place Assocs. v. City of Newark, 8 N.J. Tax 608, 611 (Tax 1986). Thus, a second reason for accurately listing the taxable value of exempt property is described in the Handbook for New Jersey Assessors, supra, § 701.54, as follows: “[i]t is essential that the assessor place a realistic value upon all exempt property in order that the correct sum in taxes will be derived from the assessment if the exemption ceases.”
N.J.S.A. 54:3-21 provides recourse for taxpayers who dispute the assessed value placed on their property:
A taxpayer feeling aggrieved by the assessed valuation of his property, or feeling that he is discriminated against by the assessed valuation of other property in the county, or a taxing district which may feel discriminated against by the assessed valuation of property in the taxing district, or by the assessed valuation of property in another taxing district in the county, may on or before April 1 appeal to the county board of taxation by filing with it a petition of appeal; ...
[ (Emphasis added).]
It was under authority of this statute that the taxpayer filed its initial appeal of the valuation underlying the 1995 exempt assessment. Although the statute clearly states that taxpayers may appeal the assessed valuation of their property, it does not explicitly state whether the underlying value of exempt property may be appealed. Is an appealing taxpayer a “taxpayer feeling aggrieved by the assessed valuation of his property” if the assessment is “0,” but the underlying value of the exempt property is disputed?
In Corrado v. City of Hoboken, 20 N.J. Misc. 134, 25 A.2d 287 (N.J.Bd.Tax App.1942), the appellant acquired property in 1940 that was listed as exempt on October 1, 1939. Following the sale, and despite the property’s exempt status, the appellant received a tax bill for the 1940 tax year as an apparent regular assessment. The appellant filed a timely appeal with the county board of *430 taxation, challenging not the exempt or non-exempt status of the property, but only the underlying value of the property listed as exempt, claiming that the property “was assessed in excess of its true value.” This appeal was dismissed by the county board of taxation, apparently on its merits.
On appeal from the county board to the state board of tax appeals, the appellant sought to cancel the entire assessment due to the property’s exempt status on October 1, 1939. After determining that it had jurisdiction to review the matter, the state board went on to decide that the appellant was “aggrieved by the assessed valuation” despite the property’s exempt status because in receiving the tax bill, the appellant “face[d] a realty [sic] as intense as can be readily imagined.” Id. at 137, 25 A.2d 287. The state board noted that the appellant faced a clouded title and collection proceedings if he failed to pay the taxes, and litigation whether or not he paid the taxes. As a result, the appellant was entitled to appeal the assessor’s tax assessment on the property listed as exempt.
The holding in Corrado was cited approvingly by the Appellate Division in Jabert Operating Corp. v. City of Newark, 16 N.J.Super. 505, 509, 85 A.2d 216 (App.Div.1951). In Jabert, the appellant acquired property in November 1948 which was listed as exempt on October 1,1948 due to its then-ownership by the city. Despite the exempt status, the property was assessed, and the appellant received a bill for 1949 taxes. The issue before the Appellate Division was whether the appellant could seek to cancel the assessment and reinstate the exempt status even though it was not an owner of the property claiming an exemption, as required by N.J.S.A. 54:4-3.6. The court held that the appellant was a taxpayer aggrieved by the assessed valuation and thus had the right to appeal the assessment even though it was not qualified to claim the exemption.
These two cases stand for the proposition that under appropriate circumstances, the county boards of taxation do have jurisdiction to review the underlying value of exempt property. But those circumstances have arisen only when there is an assessment *431 placed against property that is listed as exempt. The rationale behind these findings of jurisdiction to hear a challenge to the value placed on the exempt property is that the taxpayer has been aggrieved by an improper assessment and the receipt of a tax bill and the taxpayer in such circumstance faces risks to his property that he must be able to address immediately.
The taxpayer in the within matter did not face the same risks as the taxpayer-appellants in Corrado or Jabert. The taxpayer’s property here was assessed at “0” for tax purposes, and the taxpayer did not receive a bill for taxes owed on the property at the time it appealed to the county board of taxation in July 1995. See City of Newark v. Essex Cty. Bd. of Taxation, 110 N.J.Super. 93, 110 n. 4, 264 A.2d 461 (Law Div.1970) overruled on other grounds by Boy’s Club of Clifton, Inc. v. Jefferson Tp., 72 N.J. 389, 371 A.2d 22 (1977) (stating that “the fact that assessors are required by N.J.S.A. 54:4-27 to ‘value’ exempt properties and enter a description of such exempt properties on a separate list and to include totals in the Table of Aggregates ... does not mean that said properties are ‘assessed’ in the technical sense”); but see N.J.S.A. 54:4-64 (providing that tax liabilities are not dependent on the receipt of tax bills). Thus, the taxpayer here had not been aggrieved in the sense that it was liable for taxes based on the 1995 regular assessment. The taxpayer could have waited until October 1,1995, when the property was returned to taxable status and placed on the added assessment list, to appeal its assessment. That was the first time the taxpayer’s property was assessed and a tax bill sent out, and thus the first time the taxpayer was aggrieved by an assessed valuation under Corrado and Jabert.
Nevertheless, because of N.J.S.A. 54:4-63.27’s mandate that formerly exempt property be returned to the tax rolls at the value which they were listed on the exempt rolls, the taxpayer and the municipality knew when the taxpayer acquired the property in January 1995 what the added assessment would be on October 1 *432 of the tax year.[2] The taxpayer did not need to wait until receipt of a tax bill to know its tax liability for the property since that fact was fixed. The taxpayer here was not an exempt entity, and it is only because of the mechanics of the added assessment system that a tax bill was not received immediately, but was delayed until October 1 of the tax year. The taxpayer in this circumstance is just as aggrieved as the taxpayer who has received a tax bill as part of a regular assessment. The taxpayer knows the assessed valuation of the property and knows that a tax liability is imminent. Additionally, the marketability of the exempt property can be severely hampered by an excessive valuation, which could influence the price the taxpayer could command if it sought to sell the property. Thus, if the assessed valuation of exempt property is too high, the owner is aggrieved. The municipality, as well, may be aggrieved by an assessed valuation since it is bound by the mandate of N.J.S.A. 54:4-63.27 to apply the assessor’s valuation to the property when it is removed from the exempt rolls.
As a result, this court holds in this case that a taxpayer who has acquired property on the exempt rolls, but for which an added assessment will be made as of October 1 of the tax year, is entitled to appeal the underlying assessed valuation of the property to the county board of taxation (or the Tax Court, as the case may be) by April 1, and the county board (or the Tax Court) has jurisdiction to resolve the issue.[3] If the taxpayer determines not *433 to appeal the valuation as part of the regular assessment, he may appeal such valuation in an appeal from the added assessment.[4]
II.
Since I have found that the county board had jurisdiction to determine the underlying valuation of the exempt property acquired by the taxpayer, it is not necessary to address the issue of whether a jurisdictional defect in this situation is waivable, and was in fact waived by the municipality.[5]
It is clear, however, that the City of East Orange did not object to the jurisdiction of the Essex County Board of Taxation to hear this matter. The record before the court reflects no pleading, motion, or other form of objection to such jurisdiction before or during the fully litigated hearing on July 11,1995. It is only now, after the county board issued its July 1995 judgment, and after the time for appealing that judgment to the Tax Court expired in the context of the 1995 regular assessment, that the city raises the issue of the county board’s jurisdiction.
III.
The county board had jurisdiction to issue its July 1995 judgment; the city did not object to litigating the issue of value in July 1995. The only question that remains is whether that judgment *434 which reduced the underlying taxable value of exempt property is of the type for which the Freeze Act may be applied.
N.J.S.A. 54:3-26, known as the Freeze Act, provides:
Where no request for review is taken to the Tax Court to review the action or determination of the county board involving real property the judgment of the county board shall be conclusive and binding upon the municipal assessor and the taxing district for the assessment year, and for the 2 assessment years succeeding the assessment year, covered by the judgment, except as to changes in value of the property occurring after the assessment date. Where such changes are alleged the petition of appeal shall specifically set forth the nature of the changes relied upon as the basis for such appeal. However, the conclusive and binding effect of such judgment shall terminate with the tax year immediately preceding the year in which a program for a complete revaluation of all real property within the district has been put into effect.
The primary analysis used by the courts for determining whether issues are binding and conclusive is whether the county board of taxation hearing was fully litigated or settled (since a settlement will satisfy this requirement but a procedural disposition will not) by each party. Springfield Tp. v. Weinberg, 178 N.J.Super. 83, 428 A.2d 115 (App.Div.1981); see contra Union City Assocs. v. City of Union City, 223 N.J.Super. 316, 538 A.2d 836 (App.Div.1988), rev’d on other grounds, 115 N.J. 17, 556 A.2d 769 (1989) (holding that the entry of a county board of taxation judgment for housekeeping purpose after parties agreed to appeal directly to Tax Court was not a final judgment for purposes of the Freeze Act).
Here, the taxpayer contends that a fully litigated hearing on the issue of value of the property listed as exempt occurred before the Essex County Board of Taxation on July 11, 1995. The taxpayer asserts that evidence and testimony were presented by both sides, and the city concedes this assertion. Given such facts, there can be no dispute that a fully litigated hearing took place, and that the county board of taxation rendered its judgment after carefully reviewing the evidence before it. As a result, the county board judgment, which was not timely appealed to the Tax Court within 45 days from the service of the judgment, N.J.S.A. 54:51A-1 and - 9, was conclusive and binding on the parties.
*435 The fact that the property was exempt at the time of the county board judgment does not affect the applicability of the Freeze Act. The statute applies to judgments of value on the amount of the assessment, not to the taxable or exempt status of the property. Newark v. Fischer, supra, 8 N.J. at 199-200, 84 A.2d 547. The Court in Newark v. Fischer did not determine whether a judgment relating to the underlying value of exempt property was subject to the Freeze Act, but did state that the Freeze Act provides that “the valuation as determined by the county board shall, if no further appeal is taken, remain in effect for the next two succeeding assessment years ...” Id. at 199, 84 A.2d 547 (emphasis added). Thus the assessment based on a determination of the underlying value of tax exempt property is subject to the Freeze Act.
The purpose of the Freeze Act, as articulated in Newark v. Fischer, supra, is to prevent “harassment of the taxpayer, subjecting him to the trouble and expense of annual appeals to the county tax board.” Id. at 200, 84 A.2d 547. Thus to require the taxpayer to relitigate the issue of value of its property, even though the property was exempt at the time it was first valued by the assessor and litigated before the county board of taxation, is contrary to the underlying purpose of the Freeze Act. The city had its opportunity to challenge the value of the taxpayer’s property at the county board. The city presented evidence and witnesses. The city did not object and went forward. The consequence of allowing the city to relitigate the issue of 1995 value is that the taxpayer is subjected to two rounds of litigation on the issue of value, which is on its face inconsistent with the intent and rationale of the Freeze Act and Newark v. Fischer, supra.
It should be noted, as well, that the value determined in the appeal of the 1995 regular assessment and the value which is the basis for the 1995 added assessment appeal are precisely the same values: the value of the subject property as of October 1, 1994. In this case, the freeze is sought for 1995, not a subsequent year. The Freeze Act applies by its terms to the current year and the *436 two years subsequent to the litigated year. Although the county board cited the Freeze Act as the basis of its affirmance of the assessment, my affirmance of that determination is based on the doctrine of collateral estoppel.
The doctrine of res judicata provides that “[a] cause of action once finally determined between parties on the merits by a tribunal having jurisdiction cannot be relitigated by those parties, or their privies, in a new proceeding.” Roberts v. Goldner, 79 N.J. 82, 85, 397 A.2d 1090 (1979) (emphasis deleted). The doctrine of collateral estoppel is:
“that branch of the broader law of res judicata which bars relitigation of any issue which was actually determined in a prior action generally between the same parties, involving a different claim or cause of action.” State v. Gonzalez, 75 N.J. 181, 186 [380 A.2d 1128] (1977). For the doctrine to apply, “the factual issue must actually have been litigated and determined.” Allesandra v. Gross, 187 N.J.Super. 96, 105 [453 A.2d 904] (App.Div.1982). [Bor. of Fort Lee v. Director, Div. of Taxation, 14 N.J.Tax, 126, 140 (Tax 1994) (quoting State v. Gonzalez, 273 N.J.Super. 239, 251-52, 641 A.2d 1060 (App.Div.1994), aff'd, 142 N.J. 618, 667 A.2d 684 (1995)).]
The doctrine of res judicata may not apply in this case as two different assessments, and thus two different causes of action, were challenged in the two separate appeals: the regular assessment appeal and the added assessment appeal. But as the City of East Orange concedes, the issue of the 1995 valuation of the subject property was fully litigated at the July 11,1995 hearing on the regular assessment appeal, and thus the defendant must be collaterally estopped from challenging the 1995 valuation with respect to the added assessment. Both the parties and the issue are the same in each instance. The doctrine of collateral estoppel applies to administrative proceedings. See Allied Realty, Ltd. v. Bor. of Upper Saddle River, 221 N.J.Super. 407, 413-16, 534 A.2d 1019 (App.Div.1987), certif. denied, 110 N.J. 304, 540 A.2d 1284 (1988) (finding that the issue preclusion doctrines of res judicata and collateral estoppel apply to decisions of administrative tribunals and agency hearings).
The July 1995 judgment of the county board, reducing the taxable value of the exempt subject property from $600,000 to $133,600, collaterally estops the municipality from relitigating that *437 issue. Although the county board found that the judgment was subject to the Freeze Act, I do not make that finding in this case because it is not necessary.
IV.
The Essex County Board of Taxation had jurisdiction to issue its July 1995 judgment reducing the underlying value of the exempt property. The City of East Orange litigated the issue of value without objection or an appeal. The 1995 value of the subject found by the Essex County Board of Taxation, having been litigated in the regular assessment appeal, is conclusive and binding as to the 1995 added assessment. The city is collaterally estopped from relitigating the issue. Finally, the assessor was not authorized under N.J.S.A. 54:4-63.27 to make an assessment other than at the value placed on it by the July 1995 judgment of the Essex County Board of Taxation. The judgment of the Essex County Board of Taxation is affirmed. The 1995 added assessment, prorated for 12 months, is:
Land $100,000
Improvements 33,600
Total $133,600
The court will enter an appropriate judgment.

 The taxpayer did not acquire the property until January 31, 1995, and thus the added assessment should have been prorated for 11 months. N.J.S.A. 54:4-63.3. Taxpayer has not challenged the proration.

 The city, having failed to appeal the July 1995 judgment, then failed to follow N.J.S.A. 54:4-63.27's mandate by making its added assessment at the original $600,000 amount rather than the amount to which it was reduced by the county board, $133,600.

 The amendment of the tax appeal statute, N.J.S.A. 54:3-21, by L.1991, c. 75, sec. 28, shifting the appeal date from August 15 to April 1, was designed, in part, to see that taxpayers appeal assessments, not taxes. Since the underlying value in an exempt assessment will become the assessment once a property becomes taxable under N.J.S.A. 54:4-63.27, the logic behind the 1991 amendment would support a finding that the county board had jurisdiction to hear the July 1995 appeal.

 The circumstances that might dictate whether other taxpayers are entitled to appeal the underlying valuation of exempt property are not before this court and need not be decided.

 It remains unclear what the nature of the jurisdiction is in this case. See, e.g., Jos. L. Muscarelle Dev. Co., Inc. v. Manalapan Tp., 13 NJ.Tax 330, 335 n. 1 (N.J.Tax 1993), aff'd sub nom., J.L. Muscarelle, Inc. v. Saddle Brook Tp., 15 N.J.Tax 164 (App.Div.1994) (describing the payment of taxes jurisdiction issue in Lecross Assocs. v. City Partners, 168 N.J.Super. 96, 401 A.2d 1099 (App.Div.), certif. denied, 81 N.J. 294, 405 A.2d 837 (1979), as "quasi-jurisdictional" or “procedural defect”). This issue is important for determining whether such jurisdiction can be waived when defects arise. It should be noted, however, that subject matter jurisdiction can never be waived. Zelson v. Thomforde, 412 F.2d 56, 58 (3d Cir.), appeal after remand, 428 F.2d 1360 (3d Cir.1970); Paper v. Princeton Univ. Bd. of Trustees, 77 N.J. 55, 65-66, 389 A.2d 465 (1978).